**GOVERNMENT EXHIBIT 1**

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
OAKDALE, LA

FILE: A37-381-078

IN THE MATTER OF:

AYESH, HATEM

RESPONDENT

IN REMOVAL PROCEEDINGS

ORDER OF THE IMMIGRATION JUDGE
WITH RESPECT TO CUSTODY

Request having been made for a change in the custody status of
respondent pursuant to 8 CFR 236.1(c), and full consideration
having been given to the representations of the Immigration and
Naturalization Service and the respondent, it is hereby

_____ ORDERED that the request for a change in custody status be
denied.

__X__ ORDERED that the request be granted and that respondent be:

_____ released from custody on his own recognizance

__X__ released from custody under bond of $5,000

_____ OTHER _____

Copy of this decision has been served on the respondent and the
Service.

APPEAL: waived -- reserved

OAKDALE -- FEDERAL DET. CENTER-OAKDALE 2

Date: Apr 22, 2004

                                    JOHN A. DUCK, JR.
                                    Immigration Judge

                                                        XS

BG

**<u>GOVERNMENT EXHIBIT 2</u>**



**U.S. Department of Justice**

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

*5107 Leesburg Pike, Suite 2000*
*Falls Church, Virginia 22041*

Kriezelman, Jeffrey A.
20 North Clark Street, St. 725
Chicago, IL 60602

**Office of the District Counsel-DHS/CHI**
**55 East Monroe Street, Suite 1700**
Chicago, IL 60603

Name: AYESH, HATEM                              A37-381-078

Type of Proceeding: Removal                     Date of this notice: 4/1/2008

Type of Appeal: Case Appeal                     Appeal filed by: Alien

Date of Appeal: 2/27/2008

### NOTICE -- BRIEFING SCHEDULE

o     Enclosed is a copy of the decision of the Immigration Judge.

o     Enclosed is a copy of the transcript of the testimony of record.

o     Appealing party is granted until 4/22/2008 to submit a brief to the Board of Immigration Appeals. The brief must be **RECEIVED** at the Board on or before this date.

o     Opposing party is granted until 5/13/2008 to submit a reply brief to the Board of Immigration Appeals . The brief must be **RECEIVED** at the Board on or before this date.

**WARNING:**    If you indicated on the Notice of Appeal (Form EOIR-26) that you will file a brief or statement, you are expected to file a brief or statement in support of your appeal. If you fail to file the brief or statement within the time set for filing in this briefing schedule, the Board may summarily dismiss your appeal. *See* 8 C.F.R. § 1003.1(d)(2)(i)(E).

If you are an alien and you received this notice, you are not represented by an attorney or accredited representative. An attorney or accredited representative must file a Notice of Entry of Appearance (Form EOIR-27) to represent you. 8 C.F.R. §§ 1003.3(a)(3) and 1003.38(g). Until a Form-27 is received, you are responsible for submitting a brief, and any submissions by anyone other than you will be rejected.

**FILING INSTRUCTIONS -- In General.**

**IMPORTANT: The Board of Immigration Appeals has included two copies of this notice.
Please attach one copy of this notice to the front of your brief when you mail or**

37-381-078

**the Board, and keep one for records.  Thank you for your cooperation.**

A fee is not required for the filing of a brief.  Your brief must be RECEIVED at the Clerk's Office at the Board of Immigration Appeals within the prescribed time limits.  It is NOT sufficient simply to mail the brief and assume your brief will arrive on time.  We strongly urge the use of an overnight courier service to ensure the timely filing of your brief.

Use of an over-night courier service is strongly encouraged to ensure timely filing.

If the alien is represented by counsel at the appeal level, a Notice of Entry of Appearance as Attorney or Representative before the Board of Immigration Appeals (Form EOIR-27) must be filed with the Board.

If you have any questions about how to file something at the Board, you should review the Board's Practice Manual and Questions and Answers at www.usdoj.gov/eoir.

Proof of service on the opposing party at the address above is required for ALL submissions to the Board of Immigration Appeals -- including correspondence, forms, briefs, motions, and other documents.  If you are the Respondent or Applicant, the "Opposing Party" is the District Counsel for the DHS at the address shown above.  Your certificate of service must clearly identify the document sent to the opposing party, the opposing party's name and address, and the date it was sent to them.  Any submission filed with the Board without a certificate of service on the opposing party will be rejected.

Filing Address:

To send by courier or overnight delivery service, or to deliver in person:
Board of Immigration Appeals,
Clerk's Office,
5107 Leesburg Pike, Suite 2000,
Falls Church, VA 22041

Business hours:  Monday through Friday, 8:00 a.m. to 4:30 p.m.

To mail by regular first class mail:
Board of Immigration Appeals
Clerk's Office
P.O. Box 8530
Falls Church, VA  22041.

**FILING INSTRUCTIONS -- Extension Request.**

Unless you receive a Board Notice granting your extension request, your brief will remain due on the date stated above.

Extensions of briefing time will only be granted for good cause.  All extension requests must be in writing.  Telephonic or fax requests will not be accepted.

Extension requests must be **RECEIVED** at the Board on or before the expiration of the initial briefing schedule.  Requests for extension of briefing time received after expiration of the initial briefing period, will not be granted.

The policy of the Board is that no additional extensions will be granted.

# GOVERNMENT EXHIBIT 3

U.S. DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT

Chicago, Illinois

File A 37 381 078                     Date:      January 31, 2008

In the Matter of

<table>
<tr><td>HATEM AYESH</td><td>)<br>)<br>)<br>)</td><td>IN REMOVAL PROCEEDINGS</td></tr>
<tr><td>Respondent</td><td></td><td></td></tr>
</table>

CHARGE:            I&N Act Section 237(a)(2)(A)(iii)--convicted
                   of an aggravated felony as defined in Section
                   101(a)(43)(B); Section 237(a)(2)(B)(i)--
                   convicted of a controlled substance offense;
                   Section 237(a)(3)(D)--alien falsely
                   represented himself to be a citizen of the
                   United States for any purpose or benefit under
                   the Immigration Act or a federal or state law

APPLICATION:       Termination of Proceedings, or in the
                   alternative, a Section 212(c) Waiver of
                   Removability, or in the alternative, a
                   Continuance of Proceedings to await the
                   adjudication of an I-130 Petition.

APPEARANCES:

ON BEHALF OF RESPONDENT:          ON BEHALF OF THE DEPARTMENT
                                  OF HOMELAND SECURITY:

Justin Burton, Esquire            Anastasie Senat, Asst. Chief
Jeffrey Kriezelman, Esquire         Counsel
20 N. Clark St, Suite 725         Karen Lungrin, Asst. Chief
Chicago, IL 60602                   Counsel
                                  55 East Monroe St., Suite 1700
                                  Chicago, IL 60603


ORAL DECISION OF THE IMMIGRATION JUDGE

The Respondent is a 46 year-old married male, alien, a

native of Jerusalem (Jordan) and a citizen of no country.  At the time of the Respondent's birth on May 5, 1961, he resided in Jerusalem when the country of Jordan controlled the territory of the West Bank.  After the 1967 war, the area where the Respondent was born became part of the occupied territories of Israel.

The Respondent immigrated to the United States as a permanent resident on February 6, 1982.  The Respondent has lived in the United States on and off as a permanent resident since that time.  The Respondent, on March 23, 1988, was convicted in the Third County Court, Hidalgo County, Texas, for the offense of criminal possession of a controlled substance, to wit, marijuana in violation of Texas statute Section 481.121(b)(1).  Respondent was also convicted on August 18, 1989, in the Harris County Court, Houston, Texas, for the offense of criminal possession of a controlled substance, to wit, marijuana, in violation of Texas State statute, Section 481.121(b)(4).  The Department of Homeland security seeks to remove the Respondent from the United States based upon these convictions and also based upon the assertion that the Respondent made a false claim to citizenship when he returned to the United State from Mexico on or about August 26, 2006.  The issues present in the Respondent's case are difficult, complex, and often confusing.  This Court will attempt to go through the background of the Respondent's case as best it can.

<u>BACKGROUND</u>

The Respondent, after obtaining permanent residence

status in 1982, traveled back to Jerusalem to visit his family. On at least one occasion when he returned to the United States, he was stopped from admission because of his criminal conviction and the fact that a second criminal case was pending against him. The record reflects that the Respondent was paroled to the United States in 1989 for prosecution. However, the record is unclear when the Respondent left the United States after he was initially paroled in 1989 for prosecution. The Respondent apparently departed the United States and returned to Jerusalem during the 1990s. During multiple hearings held in his case, he testified that he brought his two United States citizen children from his first wife to Jerusalem to live with his mother in 1992 or 1993. Thus, the Respondent left the United States after he was paroled for prosecution in 1989. The Respondent apparently traveled back and forth between Jerusalem and the United States seeking admission to the United States as a returning permanent resident over a long period of time.

When Respondent took his oldest children with him to Jerusalem, his first wife opposed this action. The Respondent's first wife and the mother of his two oldest children filed a criminal case against the Respondent for kidnapping of the children. This case was filed at an unknown date but apparently was pending for a period of years, even when the Respondent returned to the United States through Mexico. The Respondent's first wife, Martha Ramirez, is the mother of the Respondent's two

oldest children, Mashahallah, and Hosen.  These children continued
to reside in Jerusalem with Respondent's mother from approximately
1993 until 2006 or 2007 when they returned separately to the
United States.  However, the Respondent returned at an earlier
time.  During one of his hearings, he testified that he resided in
Jerusalem for approximately four to five years, returning in 1998.
The record is unsure of how the Respondent returned to the United
States on this occasion.  The record does contain evidence that
the Respondent, in 1992, applied for a replacement permanent
resident card with the Immigration and Naturalization Service.
However, it is unclear when the Respondent returned to the United
States and faced the possible kidnapping charges brought against
him by his first wife.

        The record does establish that Respondent was arrested
by the Immigration and Naturalization Service (now the Department
of Homeland Security) in Oakdale, Louisiana, on October 4, 2001.
At that time, the Respondent was placed under removal proceedings
and initially charged with removability from the United States
under Sections 237(a)(2)(A)(iii) and Section 237(a)(2)(B)(i).  The
Department of Homeland Security, however, amended the charging
document and served on the Court and the Respondent a form I-261
dated December 13, 2001, charging the Respondent with
inadmissibility as an arriving alien.  (See Exhibit 2.)  As an
arriving alien, the Respondent was not entitled to be released on
bond.  The I-261 charged that the Respondent had last returned to

the United States on parole on December 12, 1989, at the port of

entry, Roma, Texas.[1]

During the Respondent's removal hearing before the

Immigration Court in Oakdale, Louisiana, he contested that he was

subject to removal from the United States because of his criminal

record.  The Respondent apparently readily admitted that he was

convicted of the crimes alleged by the Government, but he denied

that he was an alien and claimed to be a citizen of the United

States.

The Respondent, as a permanent resident, sought to apply

for United States citizenship through naturalization in 1987.

Apparently the Respondent did not have sufficient permanent

resident time initially, and his application was rejected.  The

Respondent, however, resubmitted an Application for Naturalization

in 1988.  (See Exhibit 3, Tabs F, G, H, and I.)

The Respondent apparently was interviewed by an

Immigration Examiner on March 2, 1988, and allowed to file a

Petition for Naturalization with the United States District Court,

Eastern Division, in Chicago, Illinois.  Respondent was assigned a

Petition number on the day he was interviewed.  However, the

examiner's worksheet suggests that the Respondent's Petition for

---

[1] The Respondent testified during his hearings that he did not recall whether or
not he returned to the United States on parole as alleged on December 12, 1989.
However, the Government attorney did present an I-94 and other evidence at the
time of the final hearing suggesting that this information was correct.  (See
Exhibit 13 for identification purposes only.)

Naturalization was never completed and that the examiner, Paula Price, had continued the Respondent's case for additional evidence. (See page 22 of group Exhibit 3.) The Government attorney, during the removal hearing in Oakdale, Louisiana, presented other evidence to establish that the Respondent had not completed his naturalization. Included in the record in the Respondent's current case are additional worksheets from the Immigration and Naturalization Service examiner indicating that the Respondent was told to obtain evidence from the Selective Service Commission as to why he did not register or did not have to register. The evidence presented by the Government attorney at the Respondent's continued removal hearing and filed with the Court as Exhibit 3 suggests that Respondent was interviewed by an examiner after he filed his Petition for Naturalization in May of 1988. In addition, the evidence presented by the Government attorney at the continued removal hearing and included as part of Exhibit 3 suggests that the Respondent was notified well after 1988 and in fact, on or about August 24, 1990, that he still needed to present proof of Selective Service registration or to obtain an advisory opinion concerning why he failed to register.

During the removal hearing before the Immigration Court in Oakdale, Louisiana, the Respondent's present attorney appeared telephonically on the Respondent's behalf. The Respondent's present attorney, Jeffrey Kriezelman, questioned the Government's witnesses as to whether or not the Respondent could have perhaps

completed his naturalization examination and swearing in on the date listed in the Notice for Petition for Naturalization. Paula Price, the Immigration Examiner that apparently interviewed the Respondent in 1988, testified primarily that the Respondent never completed the process, and that although the Respondent was placed under oath and given the Oath of Allegiance to the United States, that was a preliminary stage of his case. Ms. Price indicated at page 100 of the Oakdale transcript at Tab K or group Exhibit 3, that the purpose of the N-405, which is the Petition for Naturalization, doesn't mean that, "they're sworn in as a citizen." While Ms. Price admitted that an alien is permitted to file a Petition for Naturalization on the day of the naturalization interview by an examiner and perhaps he does sign an Oath of Allegiance, this does not complete the naturalization process because no oath of allegiance before the court is given and no certificate is issued.

Before any decision was made on the issue of the Respondent's citizenship, however, the Immigration Court in Oakdale, Louisiana, terminated the removal proceedings' finding that the Respondent was not properly charged as an arriving alien because he had departed the United States and apparently returned thereafter as a permanent resident. Therefore, the Judge concluded that the charges of inadmissibility contained in the Form I-261 and filed with the Court in Oakdale, Louisiana, could not be sustained. The Government attorney appealed this decision,

and the Respondent remained in custody.  It is unfortunate that
the Respondent's case took almost three years to be adjudicated by
the Immigration Court in Oakdale, Louisiana, without any real
resolution.  This Court sympathizes with the Respondent and the
fact that he was detained from approximately 2001 to 2004 while
his case was being litigated.  However, the Court in Oakdale,
Louisiana, never addressed the issue of whether or not the
Respondent was a citizen of the United States through
naturalization.

Subsequently, the Respondent was placed under removal
proceedings by the Department of Homeland Security on April 8,
2004, and charged with grounds of removability under Section
237(a)(2)(A)(iii) and Section 237(a)(2)(B)(i) of the Act.[2]

The record reflects that Jeffrey Kriezelman and Justin
Burton who represented the Respondent before the Immigration Court
in Oakdale, Louisiana, and also appeared on the Respondent's
behalf at a preliminary hearing before the Immigration Court after
the change of venue on May 6, 2004, June 4, 2004, and December 6,
2004.

At these continued removal hearings, the Respondent's
attorneys continued to argue that the Respondent had completed the
naturalization process in 1988 and was not removable from the

_____

[2] The Respondent was able to post a bond at his point since he was not charged
with being an arriving alien, and his attorney quickly moved for a change of
venue of the pending proceedings to the Court in Chicago.

A 37 381 078                    8                  January 31, 2008

United States as an alien due to his criminal convictions.
Respondent's case was continued for more evidence on this issue,
and a new hearing was set for May 4, 2005.

At the May 4, 2005, hearing, the Respondent appeared
with new attorneys.  Mr. Kalman Resnick and Mr. Sameer Chowhan
spoke for the Respondent.  However, in the interim, a number of
events took place.

The Respondent, apparently in an attempt to resolve
whether he was a citizen or not, obtained from the Government
archives a copy of his Petition for Naturalization filed in 1988
(Form N-405).

The record reflects that the Respondent apparently took
a copy of his N-405 to the State Department Passport Office and
requested a U.S. Passport.  Respondent was advised to obtain
confirmation that he was a citizen of the United States from the
Department of Homeland Security because he did not have a
Naturalization Certificate.  Respondent in this case has always
acknowledged the fact that he never received a Naturalization
Certificate.  Respondent has also generally acknowledged that he
was not sworn in as a citizen of the United States by the United
States District Court for the Northern District of Illinois.  When
Respondent returned to the offices of USCIS, he apparently was
issued a passport letter stating he was a citizen.  This occurred
on or about May 24, 2004.  Based upon the issuance of that letter,

the State Department thereafter issued the Respondent a United States citizen passport.

Subsequently, the USCIS Office and the District Director, Michael Comfort, determined that the passport letter issued by an Immigration Officer employed in their office have been issued in error. A letter was sent on December 16, 2004, to Terry Green, the Regional Director of the Passport Office, advising Mr. Green that the Respondent was not a citizen of the United States and that he had not completed his naturalization processing. Mr. Comfort indicated that a new procedure would be implemented regarding all requests for passport letters.

Based upon Mr. Comfort's letter, the State Department on March 24, 2005, issued a letter to the Respondent at his home address, advising him that in accordance with the federal regulations, the passport issued to him was automatically revoked and no longer valid. The State Department letter, from Sharon E. Palmer-Royston, Chief Legal Division, Passport Policy and Advisory Services, Washington, D.C., also advised the Respondent that in accordance with the regulations, the United States Passport remains the property of the United States Government and must be surrendered on demand. The letter finally concludes that the Respondent is requested to immediately return the passport to their office and that any further use of the U.S. Passport would constitute a felony violation of the law.

The Respondent returned to Court as noted above with a new Counsel on May 4, 2005. At that time, his new attorney denied the allegations of fact contained in the Notice to Appear and denied the charges of removability. The Respondent's attorney, however, acknowledged that he was aware that the USCIS had issued a letter advising the State Department that their own passport letter was issued improvidently. Mr. Resnick also acknowledged that he was familiar with the March 24, 2005, letter sent to the Respondent from the U.S. State Department. In fact, the letter was faxed to Mr. Resnick's office as noted by the handwritten notation at the bottom of the letter addressed to Samier, Mr. Resnick's co-counsel.

The Respondent testified under oath at the May 4, 2005, hearing that he thought he was properly a citizen of the United States and that he did not personally receive the letter from the State Department's Office in Washington, D.C., revoking his passport. Nevertheless, the Respondent, through his attorney, was advised to surrender the U.S. Passport to the Immigration Court at the next hearing.[3]

_____

[3] The Respondent's attorney, Mr. Resnick, objected to the Court's demand that the passport be placed in evidence. Mr. Resnick argued that the Immigration Court had no authority to take the property of the U.S. Passport office and that his office was considering whether or not to challenge the revocation of the Respondent's passport in U.S. District Court. The Respondent never did surrender his passport to the Immigration Court.

A 37 381 078                    11                    January 31, 2008

When questioned about where his U.S. Passport was, either during the May 4, 2005, hearing or the October 20, 2006, hearing, the Respondent stated that he did not surrender his passport to Mr. Resnick because it was lost.[4]

Respondent's case was continued for more evidence on the issue of his claim to citizenship and on the issue of other relief.  At a continued removal hearing held on October 20, 2006, Jeffrey Burton [sic] reappeared for the Respondent.  Mr. Burton was associated with Attorney Jeffrey Kriezelman who had represented the Respondent during his Oakdale, Louisiana, hearings between 2001 to 2004.

Mr. Burton argued at the October 20, 2006, hearings that although the Respondent was not given a Certificate of Citizenship and was not sworn in by the United States District Court Judge, the swearing in by the examiner when the Respondent was interviewed could constitute a conference of citizenship, or that when the Clerk of the Court, Mr. Cunningham, accepted the Petition for Naturalization and assigned a Naturalization Certificate, that action could constitute the naturalization of the Respondent.  Mr. Burton argued that perhaps his client who was given the Oath of Allegiance by the Clerk of the Court when he filed his Petition for Naturalization and it was unnecessary to actually be sworn in

---

[4] Whether the Respondent's passport was actually lost or not remains unknown. The Respondent, as will be seen later, still possessed his passport and traveled on his U.S. Passport after the revocation by the U.S. Passport Office.

and receive the Certificate from the United States District Court.
Alternatively, Mr. Burton argued that under the regulations and
law in effect prior to the Immigration Act of 1990, the USCIS had
the authority to perform administrative naturalizations and that
the Respondent became a citizen when he was placed under oath by
the examiner, Paula Price, and given the Oath of Allegiance.

      The Government attorney opposed these interpretations
citing the evidence submitted as group Exhibit 3.  The Government
attorney argued that it's clear that the examiner's note showed
that she continued the Respondent's case for proof of Selective
Service registration and that the Respondent was re-interviewed
concerning his Petition for Naturalization after March 2, 1988.
The record does reflect that a second signature on the back of the
Petition for Naturalization, which is kept in the Government's
file, does show that the Respondent's case was continued and that
the Respondent was interviewed a second time in May 1988, by
Gerald Solberg.  The Government attorney also noted that in
response to a call-in letter in August 1990, the Respondent was
also advised by a separate examiner, Ms. Stein, that the
Respondent still needed evidence concerning Selective Service
registration.  Thus, the Government attorney, contended that the
Respondent had never completed his naturalization process.[5]

---

[5] This Court is not familiar with processing worksheets used by the USCIS, and
it may have been July 27, 1990, that the Respondent's file was reviewed
concerning the processing of his Application by Ms. Stein.

The Respondent returned to Court on April 26, 2007, with Mr. Kriezelman, and the Respondent testified in support of his request for Section 212(c) waiver.  Mr. Kriezelman also suggested that Respondent's United States citizen daughter would be eligible to file an I-130 petition on the Respondent's behalf so that he might seek permanent residence anew under Section 245 of the Act. The Government attorney did not agree to continue the Respondent's case but indirectly caused a further continuance after more than six hearings in the Respondent's case.  The Government attorney presented for the first time a Form I-261 (Exhibit 10) charging the Respondent with removability under Section 237(a)(3)(D). Based upon Respondent's earlier testimony that he had used his United States citizenship passport to attempt to visit his mother in Jerusalem in August 2006 and re-entered through the Mexican border using his passport, the Government charged that the Respondent made a false claim to United States citizenship at the time of the Respondent's return.  The Government attorney also filed with the Court a new conviction record for the Respondent in the United States District Court for the Western District of Louisiana, Alexandria Division, from August 16, 2002.  This record was identified by the Respondent and was for the false use of Social Security account number in violation of 42 U.S. Code Section 408(a)(7)(B).

Based upon the submission of this new evidence, Respondent's case was again continued and a further hearing was held on April 26, 2007.

At the April 26, 2007, hearing, the Respondent testified that after returning to the United States from Jerusalem, he never received a driver's license. The Respondent indicated that he was forced to use his brother's driver's license when he drove in the United States and that the criminal charge in Louisiana stemmed from his use of his brother's identity and Social Security number in order to obtain a new driver's license. Respondent acknowledged that he received a six-month sentence and served approximately three months.

<u>ISSUES PRESENTED IN THIS CASE</u>

The first issue presented in the Respondent's case is whether or not the Department of Homeland Security has established by clear and convincing evidence that the Respondent is an alien and not a citizen of the United States. The second issue to be decided is whether or not the Respondent is eligible for a Section 212(c) Waiver of Deportability for his drug offenses from the 1980's or whether his conviction on August 16, 2002, for the false use of a Social Security card account number precludes a Section 212(c) waiver. Third, this Court must decide whether the Respondent is also removable from the United States as charged in the form I-261 for making a false claim to the United States citizenship when he returned with his passport on August 26, 2006.

Fourth, this Court must decide whether the Respondent merits a favorable exercise of discretion on any application for relief and his Request to Continue his case pending adjudication of his daughter's I-130 petition.

At the final removal hearing held on January 31, 2008, the Respondent's attorney filed an Emergency Motion for Continuance presenting evidence that the Respondent had filed in the United States District Court for the Northern District of Illinois a Petition for Declaratory Judgment seeking a review of the Department of State, Passport Office's action revoking his U.S. citizen passport. The Respondent, through his attorney, sought a continuance of the proceedings for this purpose. However, this request was denied for a number of reasons. First, the Respondent had more than ample opportunity to challenge the revocation of his passport since this fact was made known to him at his continued removal hearing on May 4, 2005. Respondent's former attorney, Mr. Resnick, indicted that he may seek to challenge the revocation of the Respondent's passport but did not. Thus, a last-minute attempt to delay the Respondent's case after more than six evidentiary hearings, was denied by the Court as a matter of discretion.[6]

----

[6] The Immigration Court does not have the authority to declare a person or individual a United States citizen. That authority is reserved solely for the U.S. Department of State and the United States Department of Homeland Security, USCIS. Nevertheless, the Immigration Court in the course of removal proceedings is faced with the issue of whether a respondent is an alien or a

The Respondent's attorney also sought a continuance to await the adjudication of the I-130 petition filed on the Respondent's behalf by his United States citizen daughter. However, the Court denied this request as a matter of discretion as well because of the record in this case. First, there is a plethora of legal and factual issues and credibility issues that must be decided. Even assuming that the I-130 petition is approved and Respondent becomes an immediate relative beneficiary under Section 201(b) of the Act, the Respondent would not be statutorily eligible for permanent residence anew because of his drug offenses. While there is a Board of Immigration Appeals decision that suggests that an alien may use a Section 212(c) waiver in conjunction with an Application for Permanent Residency, that does not address the Respondent's conviction in 2002 for what appears to be a crime involving moral turpitude. Thus, Respondent would need to show not only 212(c) eligibility but also eligibility for his Section 212(h) Waiver. This requires a separate determination as to hardship factors relating to the Respondent's qualifying relatives. Here, the record suggests that

---

citizen of the United States. Therefore, this Court must, as a matter of course, address the Respondent's contention that he is a citizen of the United States. While it is true that the United States District Court will be able to review directly the revocation of the Respondent's passport pursuant to the declaratory judgment action, it is uncertain when any disposition would be reached. Since the issues have been before the Immigration Court since Respondent was detained in 2001, this Court chose to proceed on the merits of his case.

the Respondent's only qualifying relatives are his two United States citizen children. These children currently reside in the United States but apparently spent the majority of their life living with the Respondent's mother in Israel until 2006 or 2007. While both children testified on the Respondent's behalf at the final hearing concerning hardship factors they would face, both economically and emotionally if the Respondent were not reconsidered for some relief, I find the evidence falls "far short" of even establishing a prima facie case of extreme hardship required under the statute. Similarly, the Respondent has now been convicted of an aggravated felony offense. Although this Court previously determined that the charge of removability under the aggravated felony ground of deportation, Section 237(a)(2)(A)(iii) could not be sustained based upon convictions for two possessions of marijuana, the 7th Circuit Court of Appeals recently decided in Pacheco-Diaz, Number 05-2264 (decided January 29, 2008) that a second possession offense would constitute an aggravated felony under Section 101(a)(43) of the Act. The 7th Circuit Court of Appeals considered the Supreme Court's decision in Lopez v. Gonzales, 127 S.Ct. 625 (2006). The 7th Circuit Court of Appeals, on a Motion for Reconsideration, reaffirmed its earlier Pacheco decision that although the state did not treat the respondent's second possession offense as a recidivist offense, his crime would be treated as a recidivist offense under federal law and therefore constitutes an aggravated felony. This decision

therefore precludes a Section 212(h) Waiver, even if the
Respondent were able to establish that his children would suffer
extreme hardships if he were forced to depart.  Therefore, the
Respondent's request for continuance was denied.

<u>ISSUE OF REMOVABILITY</u>

In reaching a decision on the issue of removability,
this Court carefully considered the record in its entirety.  The
Respondent admitted that he was convicted in Texas for two
possession of marijuana offenses as outlined in the Notice to
Appear.  Although Mr. Burton, as a matter of course, denied the
Respondent was convicted of the alleged offenses because of his
claim to citizenship, Respondent thereafter readily admitted that
the offenses related to him.  The Government attorney also
presented copies of the Respondent's conviction record.  (See
generally group Exhibit 3, Tab A, B, and C.)  Based upon a review
of the Respondent's conviction records and his testimony and the
recent 7th Circuit Court of Appeals decision in <u>Pacheco</u>, <u>supra</u>, I
find Respondent is removable from the United States as charged in
the Notice to Appear on both charges contained therein.  I find
Respondent has been convicted of an aggravated felony offense as
defined in Section 101(a)(43)(B) of the Act.

The next question this Court must decide is whether the
Respondent made a willful misrepresentation of fact and made a
false claim to citizenship when he returned to the United States

on August 26, 2006, and presented his United States citizen passport.

In reaching a decision on whether or not the Respondent made a false claim to United States citizenship when he returned to the United States, this Court has considered the entire record. This Court must evaluate the Respondent's credibility. Credibility involves more than demeanor. It apprehends the overall evaluation of the evidence for rationality, consistency, and a consideration of how the evidence hangs together.

After careful consideration of Respondent's testimony and the documentary evidence presented by the Government attorney, I find the Respondent made a willful misrepresentation of fact and a false claim to United States citizenship when he returned to the United States on August 26, 2006. Therefore, I find Respondent is also removable from the United States as charged in the Form I-261 dated April 26, 2007.

To sustain a finding of removability under Section 237(a)(3)(D), the Government must establish that the Respondent made a misrepresentation, that it was made willfully, and that it related to a material fact.

"Willful" for purposes of the Immigration Act is satisfied by "knowledge" or the falsity of a representation. See generally Matter of Healy and Goodchild, 17 I&N Dec. 22, 28 (BIA 1979).

The issue in the Respondent's case is not whether or not he used his United States citizen passport to return to the United States, but whether the Respondent had knowledge that his passport was not valid and he was not a citizen of the United States.

This Court has carefully reviewed the record and the Respondent's testimony. This Court does not find the Respondent credible and finds that the Respondent shifted his testimony numerous times during this many hearings. The Respondent did not disclose that he even had departed the United States and had used his United States citizen passport until his hearing in 2007.

The record reflects that the Respondent was put on notice that the Department of Homeland Security, U.S. Citizenship and Immigration Services, had improperly issued a passport letter to the State Department. The State Department had, in turn, sent the Respondent a letter advising him on May 24, 2005, that his passport was revoked and that he was not to use his passport and that he was to surrender it. Respondent's testimony concerning this letter was vague. Although the Respondent never really acknowledged that he received the letter directly from the State Department, he did not contend that it was not sent to him or that he was living at the address listed in the letter in Lombard, Illinois. Moreover, when the Respondent's attorney, Kalman Resnick, returned to court on May 4, 2005, subsequent to the issuance of the revocation letter by the State Department, Passport Office, Mr. Resnick acknowledged that he had seen it,

that his office had received it, and that he had advised the
Respondent to surrender his passport to his office.  The
Respondent testified that he did not surrender his passport to his
attorney because the passport was lost.  I find this testimony
highly questionable, given the fact that the Respondent
subsequently used his passport rather than surrendering it to the
Immigration Court or to his attorney after the May 4, 2005,
hearing.

When questioned concerning his departure from the United
States in 2006, the Respondent testified that his mother in
Jerusalem had recently had a heart attack, and he sought to visit
her.  The Respondent was not in possession of any valid travel
documents and decided to use his United States citizen passport.
Respondent attempted to board a plane here in the United States,
but his passport was due to expire in 10 days.  Therefore, no U.S.
airline would allow him to board.  The Respondent was not
deterred.  He moved to Canada using his United States citizen
passport and attempted to fly into Jerusalem through Canada.
Again, this attempt was blocked because of the expiration of his
passport.  Respondent denied that he returned to the United States
using the U.S. passport through the Canadian border, but in an odd
sort of way testified that he flew to Mexico from Canada to meet
his ex-wife.  Why the Respondent would need to fly to Mexico to
meet his ex-wife seems unclear.  During the Respondent's hearings
he testified that he has been married five times and that his

fifth wife is from Jerusalem and is present in the United States
on a visitor visa.  Therefore, it's unclear to this Court why the
Respondent would even need to fly to Mexico to seek re-entry into
the United States, using his passport unless he may have been
rejected at a port of entry or the Canadian border.  Nevertheless,
Respondent's testimony concerning his return to the United States
was also confusing and conflicted.  When questioned about his
return initially, Respondent stated that he presented himself for
inspection and was asked if he was a citizen of the United States,
and he answered "yes."  Respondent initially testified that he
never presented his passport.  However, the Respondent forgot that
he had testified in this manner when he returned to court for his
continued hearing on October 20, 2006, and April 26, 2007.  During
those continued hearings, Respondent testified that he did present
his United States citizen passport and claimed to be a citizen.
Respondent indicated that he was allowed into the United States
based upon the presentation of his passport.[7]

---

[7] Respondent's attorney argues that the fact that the Respondent was allowed to
return to the United States with the passport undercuts the Government's charge
of removability that the Respondent willfully misrepresented a material fact
and claimed to be a citizen.  Respondent's attorney argued that Respondent was
subsequently detained near the border by the Border Patrol and interviewed by
the FBI for 14 hours.  Respondent's attorney, in a brief filed with the Court,
also suggested that even the Department of Homeland Security could not
determine if the Respondent was a citizen.  However, I don't find these one-
sided allegations sufficient to rebut the general evidence of record.  The
Respondent was already under removal proceedings since 2004 at the time he
sought return to the United States.  When an alien is seeking return to the

A 37 381 078                    23                    January 31, 2008

The record in this case reflects as noted earlier in this opinion that the Respondent never completed his naturalization processing.  Although the Respondent, through his attorney, argued that the Respondent could be administratively naturalized when he filed his N-405 Petition, this argument seems inconsistent.  If the Respondent was administratively naturalized, why would the Respondent be sent to the U.S. District Court Clerk's Office to file an N-405 Petition?  Moreover, the testimony of Officer Paula Price during the earlier removal hearing in Oakdale, Louisiana, clearly shows that she never completed the naturalization process and continued the Respondent's Naturalization Application for more evidence.  The Government's exhibit establishes this fact by evidence which is clear and convincing.  Respondent's case was clearly continued on the day he filed his Petition for Naturalization for more evidence relating

---

United States and his status is unclear and is already under proceedings, the Government necessarily takes action.  It's also unclear who said what to whom. While the Respondent alleges that he was allowed to enter the United States with his passport, it's clear that the Government knew that the passport had been revoked by the U.S. State Department in its earlier action.  This Court does not find the Respondent's testimony persuasive or credible.  It's most likely that the Respondent may have entered the United States without inspection or without presenting his United States citizen passport as he originally testified.  After entering the United States, he was questioned by the authorities, but there's no clear evidence that the Respondent presented his passport to the authorities and it was not seized.  Therefore, this Court does not find the fact that the Respondent was simply allowed to return to the United States on August 26, 2006, undercuts the Government's charge.

A 37 381 078                    24                    January 31, 2008

to Selective Service registration.  The Respondent also admitted

that he was never sworn in by the United States District Court and

never received a Naturalization Certificate.  Therefore, based

upon a review of the Government's evidence, the Respondent's

testimony, and the record in its entirety, I am satisfied that the

Government has established by evidence which is clear and

convincing that he is an alien and not a citizen of the United

States.  I am also satisfied that the Government has established

by clear and convincing evidence that the Respondent knowingly

used his United States citizen passport to attempt to return to

the United States in 2006 after it had been revoked by the U.S.

Passport Office.  Respondent was put on notice that his passport

was to be surrendered by the Immigration Court during the May 4,

2005, hearing and also instructed by his own attorney.  The

Respondent initially testified that he lost his passport but then

used his passport to depart the return to the United States.  I

find, accordingly, that the lodged charge of removability has been

established by evidence which is clear and convincing.

In sum, I find the Government has established by

evidence which is clear and convincing that the Respondent is an

alien and not a citizen of the United States and that he falsely

used a United States citizen passport or claimed to be a citizen

of the United States when he returned on August 26, 2006.[8]

---

[8] If in fact the United States District Court for the Northern District of
Illinois declares that the Respondent is a citizen of the United States, then

A 37 381 078                    25                    January 31, 2008

## ISSUE OF RELIEF

The Respondent, in lieu of removal, seeks a Section 212(c) waiver.  The Respondent claims eligibility for Section 212(c) waiver because he pled guilty to the two possession offenses prior to the change in law on September 30, 1996.  The Supreme Court in INS v. St. Cyr, 533 U.S. 289, 326 (2001), determined that Section 212(c) relief remains available to aliens who pleaded guilty to an aggravated felony offense prior to the effective date of the appeal and would have eligibility for an evidentiary hearing as a matter of discretion.  In this case, although the Respondent has been convicted of an aggravated felony offense, he pled guilty to the criminal offenses and appears statutorily eligible for the Section 212(c) waiver.  Although the Government attorney has presented a criminal conviction that appears to be a crime involving moral turpitude committed within five years of the Respondent's last admission, the Government has not lodged a new charge of removability based upon that conviction.  However, this Court must decide whether the Respondent's false claim to United States citizenship committed when he returned on August 26, 2006, may be waived under Section 212(c) of the Act.  If Section 212(c) may only waive the criminal offenses and Respondent remains removable under the lodged charge,

---

that finding will moot these removal proceedings.  However, this Court cannot speculate as to the action taken by the U.S. District Court.

then the Respondent's attempt to receive a 212(c) waiver will be moot.

After reviewing the facts of this case, I find that Section 212(c) of the Act will not cover a new charge of removability or new conduct by the Respondent that occurred after the change in law. The Respondent has been found removable under Section 237(a)(3)(D) of the Act based upon his false claim to United States citizenship on or about August 26, 2006. I do not find that the Supreme Court's decision waives criminal conduct or conduct that renders the Respondent removable occurring after the change in law. Therefore, based upon this Court's earlier finding that Respondent is removable for a false claim, I find that he is statutorily ineligible for Section 212(c) waiver.

Even assuming that the Respondent is not statutorily barred from a Section 212(c) waiver, Respondent must still show that he merits a favorable exercise of discretion. This Court must consider both favorable and unfavorable evidence in deciding whether or not the Respondent qualifies as a matter of discretion.

After careful consideration of the record in its entirety, I find Respondent has now shown that he merits a favorable exercise of discretion on his request for a Section 212(c) waiver. I find the negative favors in the Respondent's case offset the positive factors, and the Waiver must be denied as a matter of discretion.

This Court is not unmindful of the fact that the
Respondent has lived in the United States as a permanent resident
since 1982.  However, the weight to be given the Respondent's
length of permanent residence is offset or limited by the general
facts of the Respondent's case.  The record relicts that after his
first marriage in the United States, the Respondent took his
oldest United States citizen children to Jerusalem to live with
his mother.  The Respondent remained in Jerusalem for a period of
time and admitted during his testimony that he stayed there for
approximately four or five years with his family.  Thus, although
the Respondent obtained permanent residence in 1982, he admitted
that he traveled back and forth to visit his family in Jerusalem
and actually resided there for a period of years until his return
in 1998.

The Respondent also admitted that since returning to the
United States in approximately 1998 or perhaps before, the
Respondent had no identity documents and assumed the identity of
his brother.  The Respondent used the identity of his brother for
the obtaining of a driver's license.  Apparently the Respondent
used his brother's driver's license with his photograph to drive
in the United States as a truck driver.  The record reflects that
in 2002 he was charged with the false use of a Social Security
account number in violation of 42 U.S. Code Section 408(a)(7)(B).
Respondent admitted that he was convicted in the United States
District Court, Western District of Louisiana, Alexandria

Division, when he used his brother's identity or Social Security card to obtain a driver's license. I find this use of a false name or false Social Security account number to be a serious negative factor in Respondent's case. The indictment shows that the Respondent pled guilty to Count I in that he knowingly and intentionally, with the intent to deceive, falsely represented to the Officer of Motor Vehicles, Marksville, Louisiana, for the purpose of obtaining an identification card, a Social Security account number assigned to someone else. Thus, as recently as 2000 or 2002 the Respondent was misrepresenting his identity for the purpose of obtaining a benefit under state law.

       I also find negative the Respondent's continued use of a United States citizen passport after he was advised by his attorney and the Department of State that the U.S. passport had been revoked. Although the Respondent sought to visit his family in Jerusalem, the Respondent knowingly and willfully knew that the use of this passport was prohibited. The passport letter issued by the State Department clearly advised the Respondent that it was illegal to travel on the passport after it was revoked and that the Respondent was supposed to surrender it. In fact, Respondent ignored this letter and traveled on the passport. I find this to be extremely negative in the Respondent's case.[9]

---

[9] It remains to be seen whether or not the U.S. District Court declares the Respondent a citizen of the United States. The Respondent alleged, even at the time of the final hearing, that he always thought he was a citizen of the

While setting these negative factors are a number of
positive factors.  The facts reflect that the Respondent supports
his large family in Jerusalem.  The Respondent has a number of
children that were born in Jerusalem and continue to reside there
either with their mothers or the Respondent's own mother.  The
record reflects that the Respondent has two United States citizen
children in the United States that he lives with and supports.
However, the weight to be given these factors is also diminished
by the general facts of the Respondent's case.  The Respondent
took his United States citizen children to Jerusalem in 1993, and
they remained there until recently.  It has only been since 2006
or 2007 that Respondent's children have returned to the United
States.  While the children, now 18 and 21 years of age, are
thriving in the United States and depend upon Respondent for
economic and emotional support, they are adults and have other
family members in the United States.  This Court does not believe
that the hardship to the Respondent's two United States citizen
children offset the Respondent's undesirability as a permanent
resident in the United States.

Finally, this Court would note that the Respondent has
only presented limited evidence as to when he lived in the United

United States.  However, for the reasons cited above and given the record in
the Respondent's case, I find Respondent's testimony incredible and not worthy
of belief.  This Court believes the Respondent knew that his passport had been
revoked and used it anyway to travel outside of the United States.

States and when he lived outside of the United States. Although the Respondent's attorney had the Respondent testify that he filed tax returns for his time in the United States, only two tax returns were ever filed with the Court. While the Respondent's attorney had Respondent testify that he "pays his taxes," the tax returns reflect very little income and actually shows that the Respondent received a large earned income credit based upon his large family. Thus, Respondent, on the documents submitted, really has not paid any Federal Income Tax to the United States despite his assertions of his attorney. Respondent did testify that he earns approximately $3,000 a week driving a truck, but much of that money is spent on gasoline and maintenance. Nevertheless, he is able to purchase a home for $250,000 without a down deposit and is able to make a mortgage payment of more than $1,500 plus taxes. It is unclear to the Court if the Respondent's income is so low how he is able to maintain the support of his children and his household.

In sum, this Court finds that the Respondent has not shown that he merits a Section 212(c) waiver as a matter of discretion.

Finally, the Respondent, through his attorney, hopes to apply for permanent resident status in the future based upon a visa petition filed by his United States citizen daughter. For the many reasons discussed above, this Court would find it unlikely that the Respondent would qualify for this benefit and

denies his continuance as a matter of discretion.  This Court believes that there are a number of statutory bars to the Respondent's future eligibility for permanent residence.

### CONCLUSION

This Court has attempted to piece together the facts of the Respondent's case that have taken place over 20 years.  The Respondent's record is a quagmire of conflicting evidence, various arguments, and unknown facts.  Respondent indicated that he was deported from Israel when he last resided there because he had overstayed a visitor visa.  It is unclear to this Court whether the Respondent can be removed from the United States even if he loses permanent resident status.  If no country will accept the Respondent, then he may simply remain in the United States without an immigration status.  That issue is to be determined by the Department of Homeland Security when they attempt to enforce the departure order.

### ORDER

IT IS HEREBY ORDERED that the Respondent's request for Section 212(c) Waiver be denied as a matter of law and discretion.

IT IS FURTHER ORDERED that the Respondent's Request to Continue his proceedings be denied.

IT IS FURTHER ORDERED that the Respondent be deported from the United States to Israel on the charges contained in the Notice to Appear and the Form I-261.

IT IS FURTHER ORDERED that if the country of Israel fails to notify the Department of Homeland Security whether it will or will not accept the Respondent into its territory within 90 days after making an inquiry, then alternatively Respondent shall be ordered deported to Jordan, the place of his birth.


ROBERT D. VINIKOOR
Immigration Judge

**GOVERNMENT EXHIBIT 4**

**U.S. Department of Homeland Security**
Chicago District
10 West Jackson Boulevard
Chicago, Illinois 60604



**U.S. Citizenship
and Immigration
Services**

December 16, 2004

Terry Green
Regional Director
Chicago Passport Office
Department of State
230 South Dearborn Street, 18th Floor
Chicago, Illinois 60604

Dear Ms Green,

This letter serves to inform you of the issuance of a passport letter in error issued by this office and therefore I am requesting that you revoke the United States passport.

Hatem Ahmad AYESH, A37381078, is currently under immigration removal proceedings and he is not a naturalized citizen of the United States. The Immigration and Customs Enforcement attorney representing the government in this proceeding discovered in court that the subject has a US passport recently issued to him. The subject's immigration A-file has been reviewed carefully to determine his status, and it does not contain or reveal evidence of naturalization ever being completed.

On May 24, 2004, Mr. Ayesh was issued the passport letter by an Immigration Officer employed in this office. The issuing officer has left the employment of the Service, therefore it cannot be ascertained what evidence was presented to the USCIS officer as proof of citizenship. Nevertheless, Mr. Ayesh should never have received this letter.

Recently we obtained a copy of the supporting documents Mr. Ayesh submitted with his passport application.
The documents consist of a copy of an N-405 and the USCIS passport letter as supporting evidence that would have accompanied his application for a United States passport to obtain the passport he possesses.

Terry Green                                                    Page 2
December 16, 2004

We are now requiring that all requests for passport letters be reviewed by the supervisor and approved of prior to the issuance of a passport letter to ensure only the right person receive the right benefit.

We apologize for the error and inconvenience we may have caused your agency. We ask that you will take the necessary actions deemed to revoke the passport.

Sincerely,

Michael M. Comfort,
District Director