UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HATEM AYESH ) | |
| ) | |
| Petitioner, ) | |
| ) | Case No. 08 C 542 |
| v. ) | |
| ) | Judge Matthew Kennelly |
| U.S. IMMIGRATION AND CUSTOMS ) | |
| ENFORCEMENT, JULIE L. MEYERS, ) | |
| ASSISTANT SECRETARY; MICHAEL B. ) | |
| MUKASEY, UNITED STATES ATTORNEY ) | |
| GENERAL; U.S DEPARTMENT OF STATE, ) | |
| SECRETARY CONDOLEEZZA RICE; ) | |
| DEPARTMENT OF HOMELAND SECURITY, ) | |
| SECRETARY MICHAEL CHERTOFF, ) | |
| ) | |
| Respondents. ) | |

**RESPONDENTS' REPLY TO PETITIONER'S
RESPONSE TO MOTION TO DISMISS COMPLAINT**

Petitioner, Hatem Ayesh (Ayesh), responded to the government's motion to dismiss and memorandum in support thereof with essentially two arguments. One argument, is that the court does have subject matter jurisdiction over this matter despite 8 U.S.C. § 1252(g); and the other argument combines Ayesh's failure to exhaust administrative remedies with the court's purported mandamus jurisdiction to order the State Department to follow its correct procedures when revoking his passport. Neither argument is persuasive, nor do they address a fundamental jurisdictional obstacle to the relief of declaratory judgment in this case, that is, the statutory exceptions provided for in 8 U.S.C. §1503(a)(1) and (2).

The respondents continue to oppose and seek dismissal of this petition and complaint on the basis that there is no subject matter jurisdiction and petitioner fails to state a claim upon which relief

may be granted. Ayesh raised the issue of his citizenship in the removal proceedings as a defense to removal, and he must exhaust his claims before the administrative authorities regarding his claims in removal proceedings. Furthermore, the response does not provide any legal basis for why the State Department should not be dismissed from this case in its entirety, since it is not the agency that is adjudicating Ayesh's claim that he is a citizen of the United States, and its regulations and procedures were properly followed in adjudicating the revocation of his passport.

Ayesh responds to the initial jurisdictional challenge set forth in 8 U.S.C. §1252(g) by claiming on the one hand that it does not apply to him because he is a citizen of the United States, whereby the language in the statute refers to a claim filed on or behalf of any "alien." Response Br. 4. On the other hand however, he claims that there is an exception to the statute which prevents the application of 1252(g) when a "miscarriage of justice would occur." Response Br. 4, citing *LaGuerre v. Reno,* 164 F.3d 744, 746 (7th Cir. 1999). However, to the extent that Ayesh claims that he is improperly in removal proceedings, the Supreme Court has "emphasized that Congress clearly intended to bar judicial review of a decision to commence removal proceedings, stating that the purpose of section 1252(g) is to 'give some measure of protection . . . to discretionary determinations' of the Attorney General and to prevent 'separate rounds of judicial intervention outside the streamlined process that Congress has designed.'" *Chapinski v. Ziglar,* 278 F.3d 718, 720, 721 (7th Cir. 2002)(quoting *Reno v. American-Arab Anti-Discrimination Comm.,* 525 U.S. 471, 142 L. Ed. 2d 940, 119 S. Ct. 936 (1999)). Ayesh's further claim that because he is a citizen there is some sort of "miscarriage of justice" occurring is unfounded as well. He is receiving the process that is due to him under the law, and the current posture of the case lies before the Board of Immigration Appeals awaiting resolution of the finding by the immigration judge that Ayesh is in fact a removable alien,

and not a citizen of the United States.  Thus, his claim to citizenship, and the government's claim that he is a removable alien are clearly at issue before the Board, which is the proper forum for the issue to be resolved, with further review at Seventh Circuit if necessary.

The exception to the statutory bar referred to by Ayesh in his response is limited to the "rare cases which present 'substantial constitutional issues,' or 'bizarre miscarriages of justice,' issues over which the administrative agencies lack the jurisdiction to decide." *Bhatt v. Reno,* 204 F.3d 744, 746 (7th Cir. 1999)(quoting *Singh v. Reno,* 182 F.3d 504, 507, 509-510 (7th Cir. 1999) and *LaGuerre v. Reno,* 164 F.3d 1035, 1040 (7th Cir. 1998).  In Ayesh's case, the administrative process is ongoing and the Board is considering his claims as it is the entity that has been established by Congress to deal with these claims, and the immigration statute sets forth the mechanism by which he will have access to all forms of review on all of his claims.  *See*  8 U.S.C. §1503(a) (Proceedings for Declaration of United States Nationality); 8 U.S.C. §1229a, (Removal Proceedings);8 U.S.C. §1252(a)(2)(D), as added by the REAL ID ACT in 2005;  8 U.S.C. §1252(b)(5)(B): "If the petitioner claims to be a national of the United States and the court of appeals finds that a genuine issue of material fact about the petitioner's nationality is presented the court shall transfer the proceeding to the district court . ."  Therefore the statutory scheme within the Act  provides review for this very issue.

Ayesh's argument in his response brief that "if the BIA affirms the IJ's decision, Mr. Ayesh's removal order becomes final and the ICE can seek to remove him immediately from the United States, without regard to his Citizenship claim," is not accurate. Response Br. 4.  A clear mechanism exists under the statute for his claims of citizenship and any other legal or constitutional question: Section 1252(a)(2)(D).  That section of law, added to the immigration statute by the REAL ID ACT enacted on May 11, 2005, (Pub. L. 109-13 Div. B Tit. ) states that :

> Nothing in subparagraph (B) or (C) or in any other provision of this chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review file with an appropriate court of appeals in accordance with this section.

Thus, Ayesh may have further judicial review if the Board does not find in his favor, and any alleged "miscarriage of justice," or constitutional question may be addressed at that time in that context. As such there is no statutory basis to bring his claim regarding his challenge of the removal proceedings to the district court at this time.

Ayesh concedes in his response that he "is challenging his order of removal to the BIA and it remains pending," but that "he is not challenging the IJ's removal order to this court. Rather he is challenging the constitutionality of the issuance of Respondents' placement of him in removal proceedings as he is not an "alien"." These statements are contradictory and further support the government's position that all issues relating to constitutionality and propriety of removal proceedings must be presented to the Seventh Circuit on a petition for review under 8 U.S.C. §1252(a)(2)(D). Ayesh may not bifurcate the "removal order" from the IJ and the order he challenges at the Board—they are one and the same, and upon taking an appeal from the IJ order, the Board will review the issues set forth and rule accordingly.

Ayesh further maintains in his response that he is not required to exhaust his administrative remedies and that district court has "the authority to issue a writ of mandamus to compel the Department of State to follow its procedures and to permit Mr. Ayesh a new passport until his citizenship claims have been properly decided." Response Br. 9. Given the arguments discussed above, it is clear that Ayesh has available administrative remedies, and he is still in the process of exhausting those remedies. The local rules provide that, in a habeas case, where the appeal from an

order of the immigration judge is allowed, the petitioner must show that he has taken such appeal to the Board and that the appeal has been denied. L.R. 81.4(a), *Illinois Court Rules*. Ayesh again states that he is not challenging the removal order and that he is not skipping the administrative process by filing his complaint with this court. Response Br. 7. However, that is exactly what he is doing. To argue that Ayesh has a right to come directly into district court to declare that he is a citizen in a situation where the issue has arisen in removal proceedings, and in fact continues to be "an issue" in proceedings, at least until the Board rules, is disingenuous and simply precluded by the exceptions to the statute.

      8 U.S.C. §1503(a) does provide that a declaratory judgment action may be brought by a person denied a right to a privilege as a national of the United States. However, the statute also says that an action may not be brought "in any case if the issue if such person's status as a national of the United States (1) arose by reason of, or in connection with any removal proceeding . . .or (2) is an issue in any such removal proceeding." 8 U.S.C. §1503(a). Because the issue of Ayesh's citizenship came up during the course of his removal proceedings which originally began in 2002, and has carried on until 2008, his claim for declaratory judgment is prohibited under this statute. Ayesh does not mention this statutory provision in his original pleading, nor in his response, however, it is a critical statutory barrier for his case to proceed in district court. As the Fifth Circuit held in *Rios-Valenzuela v. Department of Homeland Security,* 506 F.3d 393 (5th Cir. 2007), "[Ayesh] cannot obviate Congressional intent limiting the manner in which claims of nationality may be raised following the initiation of removal proceedings pursuant to 1252(b)(5) by also pursuing an alternative claim of citizenship where his claim to citizenship also arose by reason of or in connection with his removal proceedings." *Rios-Valenzuela* at 398. Ayesh has asserted his citizenship as a defense to his

removal, an issue that is currently under review at the Board. Under the circumstances of Ayesh's case, there is no statutory basis for the district court to take jurisdiction over this case and grant declaratory relief.

Courts have consistently followed the statutory language in applying the statutory exception to Section 1503's provision for filing a declaratory judgment action. *See Chau v. INS,* 247 F.3d 1026, n.2 (9th Cir. 2001); *Said v. Eddy,* 87 F.Supp.2d 937 (D. Alaska 2000); *Duran v. Reno,* 1998 WL 54611 (S.D.N.Y. 1998), *aff'rd.* 165 F.3d 13 (2d Cir. 1998); *Garcia-Sarquiz v. Sazbe,* 407 F.Supp. 789 (S.D. Fl. 1974), *aff'rd. Sub nom. Garcia-Sarquiz v. Levi,* 527 F.2d 1389 (5th Cir. 1976). Thus, the statute and case law are clear that Ayesh must exhaust his administrative remedies before a court would have jurisdiction over his immigration claims. *See Cardoso v. Reno,* 216 F.3d 512, 518 (7th Cir. 2000); *Iddir v. INS,* 301 F.3d 492, 498 (7th Cir. 2002); *Gonzalez v. O'Connell,* 355 F.3d 1010, 1016 (7th Cir. 2004)(generally, individuals may not seek relief in federal courts before "the parties exhaust prescribed administrative remedies"); *see also Yanez v. Holder,* 149 F.Supp.2d 485, 489 (N.D. Ill. 2001)(citing *McCarthy v. Madigan,* 503 U.S. 140, 144-45 (1992). There are two fundamental purposes for the exhaustion requirement: protecting administrative authority and promoting judicial efficiency." 503 U.S. 145; *see also, Weinberger v. Salfi,* 422 U.S. 749, 765 (1975). And it is the Board, which develops case law and examines the facts and circumstances of individual cases involving the issues of nationality and their effect on removal orders, which is the appropriate body with the required expertise and specialized knowledge to make the initial determination in Ayesh's case regarding the claims. Without exhausting his remedies, though, petitioner Ayesh's case must fail for lack of jurisdiction pursuant to 8 U.S.C. §1252(d) and Section 1503(a).

With respect to the claims asserted against the Department of State and Secretary Rice,

Ayesh does not address a viable jurisdictional basis for his claims against them in his response. First he has not responded to the arguments advanced by the government in the motion to dismiss and memorandum regarding jurisdiction over the claims against the Department of State and the Secretary. He has not established that there is subject matter jurisdiction based upon 8 U.S. C. §1503, as noted above, nor has he asserted a basis upon which mandamus may be granted. Second, Ayesh cannot assert any "clear right to relief sought, nor can he assert that the defendants have a "clear duty to perform," or finally that "no other adequate remedy is available." *Iddir v. INS,* 301 F.3d 492, 499 (7th Cir. 2002); *Blaney v. U.S.* 34 F.3d 509, 513 (7th Cir. 1994). While Ayesh does state in his response that the Department of State has a "clear duty to follow its regulations and allow Mr. Ayesh an opportunity to contest the revocation and view the evidence the Department has utilized in its decision to revoke his passport," this does not establish that the court has the "authority to issue a writ of mandamus to compel the Department of State to follow its procedures *and to permit Mr. Ayesh a new passport until his citizenship claims have been properly decided."* Response Br. At 9, (emphasis added).

As discussed in the memorandum filed previously, in his prayer for other claims of relief from the court, petitioner Ayesh seeks to have a new passport issued and he also seeks an injunction barring the Department from asserting any provision of 22 C.F.R. §§ 51.4(h) and 51.70(a) against him. In his response to the motion to dismiss the complaint, Ayesh now states that the Department did *not* follow its appropriate regulations and procedures in revoking his passport. *See* Response Br. At p. 9. While the Department of State did issue Ayesh a U.S. Passport, it was issued upon the basis of the US CIS letter received on May 24, 2004 verifying that he had become a naturalized U.S. citizen on March 2, 1988. (*See* Petit. Ex. B, C; *see also* Respondents' Memorandum Govt. Ex. 3 pages 21,

23-25). As soon as the Department of State was notified of the fact that US CIS had issued the May 24, 2004 letter in error, the Department acted immediately and appropriately in revoking Ayesh's passport on March 24, 2005, on the basis of non-nationality. (*See* Petit. Ex. C). Consistent with the regulations in effect at that time, as well as today, a U.S. Passport could and should be revoked if it was issued to a non-national. *See* 22 C.F.R. §§51.72 & 51.2(a), citing 22 U.S.C. §212. This remains the law today. *See* 22 C.F.R. §§51.62 & 51.2(a) (effective February 1, 2008); 22 U.S.C. §212. When the Department received a letter from the district director of U.S. CIS, Chicago (Respondent's Memorandum Govt. Ex.4) requesting that the Department of State take appropriate action to revoke petitioner's passport, it was because he had never completed the naturalization process to obtain U.S. citizenship. After review of this information and the applicable law, the Department of State revoked his passport in accordance with the appropriate regulations, and notified petitioner of the decision in a detailed letter explaining the basis for the revocation. *See* 22 U.S.C. §212; 22 C.F.R. §51.2 and Respondents' Memorandum Govt. Ex. 3, pages 21-22; 22 C.F.R. §51.72 & 51.80(a)(1)(effective through January 31, 2008)(now 22 C.F.R. § 51.62 & 51.70(b)(1)). Thus, the Department followed the proper procedures in revoking Ayesh's passport, and Ayesh's plea to the court to intervene and compel the Department to follow its procedures and issue him a new passport is unfounded as no violation of these procedures has been – or can be – asserted or established by Ayesh.

      The claim regarding the issuance of a passport must fail, as previously stated because a passport may only be issued to a United States national, and Ayesh is not a national of the United States at this time. Furthermore it may only be issued by the Secretary of State. 22 U.S.C. §211a and §212. This claim of citizenship is currently in dispute and in litigation before the Board, and upon that review and the possible review by the Court of Appeals, his claim to citizenship and the benefits

he may receive from that will derive from that point forward, but this court does not have the power to grant relief to petitioner in the first instance. *See* 8 U.S.C. §1252(b)(5).[1]

For all of the foregoing reasons the respondents respectfully request that this case be dismissed in its entirety for lack of jurisdiction and a failure to state a claim on which relief may be granted.

Respectfully Submitted,

PATRICK J. FITZGERALD
United States Attorney

By: s/: Sheila McNulty
SHEILA McNULTY
Special Assistant U.S. Attorney
219 S. Dearborn Street
Chicago, Illinois 60604
(312) 353-8788

---

[1] Additionally, with respect to his claims for a new passport, petitioner Ayesh fails to allege that he submitted a timely and current passport application with recitals of current facts, supporting documents and current photographs. 22 U.S.C. §213 provides that before a United States passport can be issued the applicant "shall subscribe and submit a written application which shall contain a true recital of each and every matter of fact which may be required by law or by any rules authorized by law." Even if he is found to be a United States citizen, Ayesh will have to file a new and timely passport application, including all supporting information, before he could bring the allegations he sets forth in the current litigation.